IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-02707-PAB-KMT

COLORADO FIRE SPRINKLER, INC.,

    Plaintiff,

v.

NATIONAL AUTOMATIC SPRINKLER INDUSTRY PENSION FUND, and
TRUSTEES OF THE NATIONAL AUTOMATIC SPRINKLER INDUSTRY PENSION
FUND,

    Defendants.

_____

**ORDER**
_____

    This matter is before the Court on defendants' Motion to Stay [Docket No. 18]. Plaintiff responded [Docket No. 25] and defendants replied [Docket No. 26]. Defendants ask the Court to invoke the primary jurisdiction doctrine and stay this case pending rulemaking by the Pension Benefit Guaranty Corporation ("PBGC").

## I. BACKGROUND[1]

    This lawsuit stems from an arbitrator's award in favor of defendants. Plaintiff is a contractor specializing in the installation and servicing of fire sprinkler systems in commercial properties in southern Colorado. Docket No. 1 at 4, ¶ 11. Defendant National Automatic Sprinkler Industry Pension Fund (the "Fund") is a multiemployer pension plan and defendant Trustees of the National Automatic Sprinkler Industry Pension Fund ("Trustees") are the duly appointed trustees of the Fund. *Id.*, ¶¶ 12-13.

---

[1] The following facts are drawn from plaintiff's complaint and the briefing.

Kent Stringer founded plaintiff in 1991, but did not hire any employees until 1994. *Id.* at 4-5, ¶¶ 11, 17. However, in 1991, plaintiff entered into a series of collective bargaining agreements with the Road Sprinklers Fitters Local Union No. 669 (the "Union"). *Id.* at 4, ¶ 14. Plaintiff continued to enter into collective bargaining agreements with the Union until the most recent one expired on March 31, 2013. *Id.* at 7, ¶ 23. The Union filed unfair labor practice charges with the National Labor Relations Board ("NLRB"). *Id.* at 10, ¶ 28. The administrative law judge ("ALJ") found that plaintiff was at fault, but also held that the unfair labor practice charges related to the cessation of payments to the Union's benefit were time-barred. *Colo. Fire Sprinkler, Inc. v. NLRB*, 891 F.3d 1031, 1037 (D.C. Cir. 2018). The NLRB affirmed in part and reversed in part. *Id.* Plaintiff appealed; the Court of Appeals for the District of Columbia vacated the NLRB's decision and remanded. *Id.* at 1041.

On June 25, 2018, the Fund sent a formal notice requiring plaintiff to make 61 quarterly payments of $47,295.37 and a final payment of $13,044.71 for a total of $1,815,565.00 withdrawal liability using the "Segal blend" to calculate the liability. Docket No. 1 at 13, ¶ 34. Plaintiff initiated arbitration of the withdrawal liability, and on September 7, 2021 the arbitrator affirmed the reasonableness of the award. *Id.* at 18-19, ¶ 52. Plaintiff initiated suit on October 6, 2021 to vacate the arbitrator's award and declare that it owes no withdrawal liability or, at a minimum, to recalculate the award. *Id.* at 20, ¶ 56.

Plaintiff brings four claims: (1) use of the Segal blend to compute withdrawal liability violated ERISA; (2) withdrawal liability is precluded by the doctrine of laches and

2

ERISA; (3) the wrongful declaration of the date of withdrawal violated ERISA; and (4) procedural violations.  *Id.* at 21-31, ¶¶ 60-109.

Defendants filed a motion to stay based on the primary jurisdiction doctrine. Docket No. 18.  The PBGC has indicated that it intends to promulgate a rule to "prescribe actuarial assumptions which may be used by a multiemployer plan actuary in determining an employer's withdrawal liability."  U.S. OFFICE OF MGMT. & BUDGET, OFFICE OF INFO. & REGULATORY AFFAIRS, *Actuarial Assumptions for Determining an Employer's Withdrawal Liability* (last visited Sept. 19, 2022), https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202110&RIN=1212-AB54.  Defendants argue that the proposed rule is directly relevant, if not dispositive of, whether the Fund's use of the Segal blend to calculate withdrawal liability was reasonable.  Docket No. 18 at 6-7.  Plaintiff opposes the motion.  Docket No. 25.

## II.  LEGAL STANDARD

### A.  Employee Retirement Income Security Act ("ERISA")

ERISA creates a comprehensive statutory scheme to regulate private pension plans.  *Sofco Erectors, Inc. v. Trustees of Ohio Operating Eng'rs Pension Fund*, 15 F.4th 407, 415 (6th Cir. 2021).  The PBGC manages the plan termination insurance program.  29 U.S.C. § 1302.  Multiemployer plans provide benefits for union members who work for employers in the same industry.  *Sofco*, 15 F.4th at 415.  In the Multiemployer Pension Plan Amendments Act ("MPPAA"), Congress imposed liability for complete and partial withdrawals from multiemployer pension plans in order to address unfunded liability issues.  *Id.* at 415-16.  However, the MPPAA made specific

rules for when withdrawal liability is imposed in the construction industry because the work is done on a project-by-project basis and often fluctuates.  *Id.*

When an employer withdraws from a multiemployer plan, the plan sponsor assesses withdrawal liability and sends the employer a demand for payment.  29 U.S.C. §§ 1382, 1399.  Withdrawal liability is calculated by professional actuaries who must use "actuarial assumptions and methods which, in the aggregate, are reasonable (taking into account the experience of the plan and reasonable expectations) and which, in combination, offer the actuary's best estimate of anticipated experience under the plan."  *Id.* § 1393(a)(1).  ERISA requires an employer who wishes to challenge the assessment to first arbitrate the dispute and then appeal the arbitrator's decision.  *Id.* § 1401(a)(1), (b)(2).  To challenge an actuary's calculation of withdrawal liability, the employer must show "that the actuarial assumptions and methods used in the determination were, in the aggregate, unreasonable (taking into account the experience of the plan and reasonable expectations), or the plan's actuary made a significant error in applying the actuarial assumptions or methods."  *Id*. § 1401(a)(3)(B).  On review in federal court, "there shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct."  *Id.* § 1401(c).

### B.  Primary Jurisdiction

Even where a court has subject matter jurisdiction over a claim, courts have discretion to refer an issue to an administrative agency.  *Marshall v. El Paso Natural Gas Co.,* 874 F.2d 1373, 1376 (10th Cir. 1989).  The doctrine of primary jurisdiction is "specifically applicable to claims properly cognizable in court that contain some issue

4

within the special competence of an administrative agency." *Reiter v. Cooper,* 507 U.S. 258, 268 (1993).

The purpose of the doctrine is to "allow agencies to render opinions on issues underlying and related to the cause of action." *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.,* 415 F.3d 1171, 1179 (10th Cir. 2005). It is "designed to allow an agency to pass on issues within its particular area of expertise before returning jurisdiction to federal district court for final resolution of the case." *Id.* at 1176; *see also Williams Pipe Line Co. v. Empire Gas Corp.,* 76 F.3d 1491, 1496 (10th Cir. 1996) ("[C]ourts apply primary jurisdiction to cases involving technical and intricate questions of fact and policy that Congress has assigned to a specific agency.").

In determining whether to invoke the primary jurisdiction doctrine, a court is to consider whether the issues of fact in the case: "(1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency." *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1239 (10th Cir. 2007) (quoting *Crystal Clear Commc'ns*, 415 F.3d at 1179). Additionally, when the regulatory agency has actions pending before it which may influence the instant litigation, invocation of the doctrine may be appropriate. *See Mical Commc'ns, Inc. v. Sprint Telemedia, Inc.,* 1 F.3d 1031, 1037-38 (10th Cir.1993). However, there is no "fixed formula" for applying the doctrine and courts should make a case-by-case determination. *Id.*

When the primary jurisdiction doctrine is invoked, "the judicial process is suspended pending referral of such issues to the administrative body for its views." *Id.*

5

(citation omitted).  Referral does not automatically divest the court of jurisdiction. *Reiter,* 507 U.S. at 268.  The district court may retain jurisdiction over the proceedings by staying a case pending agency action or, if neither party will be unfairly disadvantaged, dismissing the case without prejudice.  *Id.* at 268-69; *see also Crystal Clear Commc'ns,* 415 F.3d at 1174, 1176 (explaining district court administratively closed case but would allow it reopened upon a party's motion, indicating the court's "contemplat[ion of] continued litigation after completion of administrative proceedings").

## III.  ANALYSIS

Defendants argue that the Court should invoke the primary jurisdiction doctrine in this case.  *See generally* Docket No. 18.  As justification, defendants cite the "brewing circuit split" on whether the use of the Segal blend is reasonable.[2]  *Id.* at 4-5.  Defendants additionally cite the PBGC's notice of proposed rulemaking ("NPRM") regarding which actuarial assumptions may be used to determine withdrawal liability, arguing that "the impending rule is directly relevant, if not dispositive, of the key question raised by CFS's Complaint."  *Id.* at 7.

Although defendants invoke the primary jurisdiction doctrine, what defendants seek is a stay of this case.  *See id.* at 2.  It is well-established that a court has "broad discretion to stay proceedings as an incident to its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  However, the Tenth Circuit has

---

[2] On July 8, 2022, the Court of Appeals for the District of Columbia issued an opinion in *United Mine Workers of Am. 1974 Pension Plan v. Energy W. Mining Co.*, 39 F.4th 730 (D.C. Cir. 2022).  In the opinion, the D.C. Circuit reversed the district court, and held that "actuaries must select a discount rate based on the plan's actual anticipated investment experience" when calculating withdrawal liability, in accordance with the Sixth Circuit's decision in *Sofco.  Id.* at 738.  Accordingly, defendants' anticipated circuit split has not come to pass.

cautioned that "the right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). Stays of all proceedings in a case are thus "generally disfavored in this District" and are considered to be "the exception rather than the rule." *Davidson v. Bank of Am. N.A.*, No. 14-cv-01578-CMA-KMT, 2015 WL 5444308, at *1 (D. Colo. Sept. 16, 2015). A stay may, however, be appropriate in certain circumstances. In determining whether to grant or deny a stay, courts in this district consider the following factors (the *String Cheese Incident* factors"): "(1) plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 05-cv-01934-LTB-PAC, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006).

Because defendants base their argument for a stay on the primary jurisdiction doctrine, they do not address the *String Cheese Incident* factors. However, even if the Court were to consider these factors, the Court would find that they do not warrant a stay in this case.

Plaintiff has a strong interest in proceeding expeditiously as this case is the latest outgrowth of a dispute stemming from 2013. The speculative nature of the PBGC rule also counsels against staying the case. Defendants' reply cites a NPRM for January 2022. Docket No. 26 at 2. However, defendants have not provided any additional information on the status of the NPRM and the Court's own research has not shown any progress on the rule. Instead, the spring 2022 publication provides a date of July 2022

7

for the NPRM.  U.S. OFFICE OF MGMT. & BUDGET, OFFICE OF INFO. & REGULATORY AFFAIRS, *Actuarial Assumptions for Determining an Employer's Withdrawal Liability* (last visited Sept. 19, 2022), https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202 204&RIN=1212-AB54.  This case has not moved forward while defendants' motion has been pending, and there would likely be a significant delay in the resolution of plaintiff's claim if the Court were to stay the case based on a NPRM.  *See Murphy v. Bob Cochran Motors, Inc.*, 2020 WL 6731130, at *12 (W.D. Pa. Aug. 4, 2020) (finding "any benefit gained by the Court if it were to defer to the DOJ here is outweighed by the need to resolve this dispute 'fairly yet as expeditiously as possible'" where agency issued an advanced NPRM in 2010 and withdrew the notice in 2017); *Arizona ex rel. Goddard v. Harkins Admin. Servs., Inc.*, 2011 WL 13202686, at *3 (D. Ariz. Feb. 8, 2011) ("[T]he DOJ does not have an administrative process in which these parties can directly participate to resolve their dispute.  The absence of such an administrative process argues against referral to an agency under the primary jurisdiction doctrine."); *In re Fontem US, Inc. Consumer Class Action Litig.*, 2016 WL 11503066, at *13 (C.D. Cal. Apr. 22, 2016) (declining to invoke primary jurisdiction doctrine based on a proposed rule where it was unclear whether any aspect of the case would turn on an issue the agency was contemplating).  Accordingly, the Court finds the first factor weighs against a stay.

The burden on defendants is the burden of proceeding with the case.  However, "[t]he ordinary burdens associated with litigating a case do not constitute undue burden."  *Collins v. Ace Mortg. Funding, LLC*, No. 08-cv-01709-REB-KLM, 2008 WL 4457850, at *1 (D. Colo. Oct. 1, 2008).  The second factor weighs against a stay.

The Court also finds that convenience to the Court does not weigh in favor of a stay, despite defendants' arguments that the PBGC's forthcoming rule may resolve issues before the Court.  Specifically, defendants argue that, if the rule promulgated by PBGC is that the discount rate used to calculate withdrawal liability need not be the same as the plan's minimum funding rate, then plaintiff's argument that use of the Segal blend was unreasonable would be undercut.  Docket No. 18 at 7-8.  Conversely, defendants' arguments that the Segal blend was reasonable would be undercut if the PBGC issued a rule to the opposite effect.  *Id.* at 8.  This, however, ignores that there are two provisions in 29 U.S.C. § 1393(a); one for how to determine actuarial estimates when the PBGC has promulgated a rule and one for when the PBGC has not.  Defendants fail to show why a PBGC rule would change what is "reasonable" in § 1393(a).  Accordingly, the Court finds that factor three does not weigh in favor of a stay.

The Court is unaware of the interests of non-parties to this litigation and accordingly finds factor four neutral.  With respect to factor five, the public has an interest in the speedy resolution of legal disputes.  *Prison Legal News v. Fed. Bureau of Prisons*, No. 15-cv-02184-RM-STV, 2017 WL 10619942, at *13 (D. Colo. Feb 23, 2017).  The delay associated with staying a case for an indeterminate amount of time, noted above with respect to factor one, is thus also relevant to factor five.  Additionally, while the Court agrees with defendants that a PBGC rule will promote uniformity in future business regulations, which could promote the public interest, there is no indication that staying *this* case based on the NPRM will promote "uniformity and consistency in the regulation of the business entrusted to the particular agency."  *TON Servs.*, 493 F.3d at

9

1239.  This is because defendants fail to show why a PBGC rule would change what is "reasonable" in § 1393(a).

The Court finds that the *String Cheese Incident* factors weigh against granting a stay in this case.

For many of the same reasons, defendants' invocation of the primary jurisdiction doctrine is unavailing.  The Court considers whether the issues of fact in the case: "(1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency."  *Id*.

The Court rejects defendants' argument that the facts of this case are outside the conventional experiences of judges.  While actuarial assumptions involve technical issues, the core determination of the Segal blend claim is whether its use was "reasonable."  This is a determination that is within a court's conventional experience. *See, e.g.*, *United Mine Workers*, 39 F.4th at 739 (noting cases finding that actuary may choose within a reasonable range of estimates, rather than a single "best" estimate). Additionally, as the Court noted above, uniformity and consistency are in the public interest, but staying this case would not promote them.  Accordingly, the Court finds that invocation of the primary jurisdiction doctrine is not appropriate under the Tenth Circuit's factors.[3]  *See TON Servs.*, 493 at 1239 (a court is to consider whether the issues of fact

---

[3] In defendants reply, they argue that administrative discretion also warrants invoking primary jurisdiction.  Docket No. 26 at 4-5.  However, defendants did not make this argument in their motion, and arguments raised for the first time in reply are waived. *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("[A] party waives issues and arguments raised for the first time in a reply brief." (quoting *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011)).

in the case: "(1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency").

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' Motion to Stay [Docket No. 18] is **DENIED**.

DATED September 26, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

11